We'll hear argument now in the case of Conner v. Waterman. Mr. Wiseman. Good morning, your honors. May it please the court. My name is Ryan Wiesner. I am here today as volunteer appellate counsel for the plaintiff appellant Eric Conner. Mr. Conner filed this appeal asking the court to reverse a grant of summary judgment in favor of the appellees dismissing his Eighth Amendment claims. His Eighth Amendment claims that he asserted in the district court stem from two serious medical conditions he alleges he suffered from during a March and April 2017 stay in clinical observation, which would be a segregated section of the prison that he was incarcerated in. Excuse me. Ultimately, Mr. Conner believes that his claims should be remanded to the district court so that a trier of fact can hear the competing evidence that was presented to the district court. Ultimately, Mr. Conner claims that he suffered from dry, cracked and bleeding feet and then a second condition of generally dry and ashy skin that then led to hygiene issues. Ultimately, we believe the record evidence demonstrates that each of the appellees health care providers at the jail were aware that Mr. Conner had been diagnosed with both both conditions in January of 2017 received treatment for roughly a 60 day time period. Almost consecutively, the treatments were entered as KLP PRN, which would mean keep on person as needed. So he had access to these medicated creams in his jail cell. Mr. Conner has a history of mental health issues. So on February 13th, he was put into a clinical observation cell, which is a high security area of the prison where he's in a cell by himself and routinely watched every 15 minutes. He was allowed to keep his medications on his person for the first several days, but then misused the creams. He doesn't deny misusing them. His story is it was out of protest against the jail. After he misused them, the health care providers and the psych providers specifically no longer allowed him to possess the creams in his cell. However, the health services unit nurses, including the appellees in this case, specifically Miss McCardle, still put in a reasonable accommodation treatment plan for him. They would go to his cell, tether him to his door and administer the cream. And that went on for at least seven days while he was in this February 2017 clinical confinement or observational clinical confinement period. Mr. Conner leaves clinical confinement on March 2nd with every intention of going back. He even wrote the health services unit explaining he didn't believe that he should be out. He's going to go back. And lo and behold, he commits another kind of self-harm incident and is put back in clinical confinement on March 3rd. The relevant time period for this deliberate indifference case is March 3rd through about April 20th. So on March 3rd, he writes the health services unit at the instruction of a health services staff member that he's going into clinical observation. He's not going to be able to possess his creams, but he still wants to receive them. He gets a response on March 3rd from a nurse saying, yes, you will have access to the creams from the med cart. A med pass comes by once or twice a day to administer medications pursuant to provider treatment plans. Long story short, he goes through March 15th without any treatment. Mr. Conner, through his own witness declarations, through a declaration from a cellmate... Counsel, has a claim for medical malpractice under state law been pursued? No, he did not file one, Your Honor. He only filed in federal court under the Eighth Amendment. And no medical malpractice claim asserted under the supplemental jurisdiction? No, not at all. Hard to see this even as medical malpractice. Mr. Conner would disagree, obviously. I think the issue here, one of the issues I think that was bogged down in the briefing was, what is Mr. Conner really claiming here? I'm not going to sit in front of you and tell you that dry skin on the bottom of a person's feet is a serious medical condition. Not at all. But sometime in early March, when Mr. Conner was prevented from using the cream at all, he claims to have developed deep lacerations on the bottom of his feet, and his feet started to bleed. Even with those concerns made to the health services unit, and specifically to Nurse Bethel and Nurse Waterman, nobody did anything for him. So he goes through March 15th, and all it took was Nurse Waterman, according to her own story, to look through his cell window and, I'll use the word diagnose, but observe that his feet were in such a condition that he required daily treatment. So the HSU staff implemented a care plan where now they would make Mr. Conner walk from his cell to the health services unit in a different part of the prison barefoot. They would apply cream to the bottom of his feet and then make him commute back, and Mr. Conner within a day and a half complained, the cream's no longer staying on my feet, it's not working. And they did nothing for him until April 4th where, out of the blue, they just allowed him to possess the creams again in his cell. One of the issues that I took with the district court decision was, it's pretty apparent, I'm not going to dispute that Mr. Conner, as of roughly March 17th, refused care. But he did so and he communicated to the HSU staff that it was because the care was ineffective. When you look at the totality of the care that this man received, for 60 days he received these creams. He'll tell you that it was almost daily, he had it in his cell, he could put it on any time he wanted to. And even with the medication, there are progress notes that describe his feet as being very dry, they're not in a good condition. Well now the guy goes 15 days or so without the cream, they start to crack and bleed, and he voices his concern and he gets this kind of, you know, inept treatment plan where now they're forcing him barefoot to walk. Ultimately it wasn't until April 4th when they gave him the cream and that's when this claim halts. However, he had another issue as well, he suffered from generally dry skin. And again, I'm not going to try to explain to you or make the argument that a person with dry skin is suffering from an Eighth Amendment serious medical need. But in Mr. Conner's case, it got so discomforting for him that he stopped showering for weeks at a time. The record has several statements from him that cellmates, jail providers would tell him that he stunk flat out. So you have an individual who's going weeks without showering and at the same time complaining that he needs his medicated lotions in order to, you know, alleviate the pain, the itching, the discomfort, but also just be able to have the daily activity of showering. And that went on through about April 20th. So ultimately you have the facts in the record that support from about March 3rd through April 4th for 30 days, this inmate is suffering from bleeding, cracked feet. And through April 20th, he's unable to shower just because of ignorance of his claims for his previously prescribed medicated lotions. With that, I'll leave the remainder for a vote. Certainly, counsel. Ms. Schmelzer. May it please the court. I'm Jody Schmelzer, an assistant attorney general for the state of Wisconsin. And I represent Defendant Apolise Delinda Waterman and Nathan Bethel. In February and March of 2017, Eric Conner posed a constant and serious threat to his own life. He put staff in a position where they had to remove almost all of his property and monitor him 24-7. But monitoring Mr. Conner proved difficult when he used those lotions and creams he had to cover his security camera in his cell. Shortly after that and another suicide attempt, staff had to prioritize preventing suicide over foot creams and lotions. This was not an Eighth Amendment violation. Despite the directive from his treatment team to remove his access to those creams and lotions in his cell, Conner's request for foot treatment was not ignored. Ms. Waterman and Nurse Bethel provided him out-of-cell foot treatments consisting not just of applying foot lotions, but also soaking his feet and cleaning them in an Epsom soap bath, something he never challenged as being ineffective or not adequate. He refused most of those treatments. No part of this record supports a finding of deliberate indifference on the part of Ms. Waterman or Nurse Bethel. And the treatment decisions made by these providers did not violate the Eighth Amendment. I'd like to address one of Mr. Conner's points here that they did nothing for him with these out-of-cell treatments. Like I just stated, this wasn't just applying cream. It was also soaking his feet, and apparently if they're cracked and bleeding, would have some benefit to him. What this dwindles down to, I think, Your Honors, is a disagreement with a course of treatment, which cannot support a claim of deliberate indifference, even when the quality of that care is substandard to the point of negligence or malpractice, which I agree with, Your Honor, is not even an issue at this case, because what we have here is something that did not constitute a serious medical need, both dry skin and dry, cracked feet. I'd also like to address Mr. Conner's argument that not having access to lotion prevented him from showering, which then is support for an Eighth Amendment deliberate indifference claim. And I addressed this in my brief as well. This is an attempt to re-litigate a claim that's already been litigated in the district court and before this court in his prior case that this court issued a decision on a few months ago, Conner v. Holm, where he challenged, through this period of observation, this exact period of time, not being able to shower. And in that case, this court said that though showering without lotion made it unpleasant, no reasonable jury could find that it was cruel and unusual under contemporary standards of decency, or that it deprived Mr. Conner of basic human needs. That there's no reason why, first of all, that sort of argument is precluded. I think, secondly, there's no reason why there's any different resolution to that claim here today. I think looking at this case... I was talking about a lack of a preclusion argument in your brief. Has claim preclusion ever been raised in this case? It hasn't been raised, Your Honor, because... It looks like a classic situation of claim splitting. It is. I think because this claim that not having lotion deprived him of basic hygiene was really only developed on appeal. It clearly was a separate claim in the district court. The court actually split that. He had other property that was restricted that was part of his other case. And the showering was part of that case as well. So I think it was litigated separately below, and it sort of developed into this denial of hygiene, denial of showering on appeal. I'd also like to address Mr. Conner's argument that no one did anything for Mr. Conner. They should have known about his prescription for as-needed foot lotion. They didn't provide it to him until March 14th. But really what that does is it ignores sort of a basic premise in any Section 1983 claim, which is that these are individualistic claims. You have to show that each individual defendant was involved in causing that deprivation. And here the record is undisputed. Ms. Waterman maybe knew that he had access to these items, but as was conceded in oral argument here, he didn't have a serious medical need for those until some time in March. And Ms. Waterman was not made aware of his request for those as-needed foot treatments until March 11th. So what we're talking about, and that's construing the facts in Mr. Conner's favor. So what we're talking about is a four-day delay in treatment at most from when he's provided those out-of-cell treatments on March 15th, which is, there's no verifiable evidence in the record that that caused some, that that four-day delay caused some harm outside of just the underlying condition of his dry, cracked feet. I see my time is almost up, so unless I have further questions from the panel, I'd like to conclude by requesting that summary judgment be affirmed. Thank you, Counsel. Ms. Johnson. Good morning, Your Honors, and may it please the Court. I'm Alyssa Johnson, I'm here on behalf of Nurse Practitioner Sandra McArdle. The main point to keep in mind as it relates to Nurse Practitioner Sandra McArdle is that her limited interactions with Mr. Conner while he was on clinical observation status did not amount to actions that were criminally reckless or an intentional infliction of suffering to a serious medical need. So in looking at this, you have to look at the interactions at the time she interacted with Mr. Conner and whether at that time she was deliberately indifferent and he had a serious medical need. During the 12-day time period during which Mr. Conner had no access to creams and lotions, which was March 3rd when he went to clinical observation status, to March 15th when Ms. Waterman ordered out-of-cell access to his foot treatment, Ms. McArdle only saw Mr. Conner on March 7th. When she saw him, that was an appointment for a lactose allergy. He walked to the appointment by himself without issue, and at that time his feet were just dry, there was no bleeding going on, per his own admissions. There's no evidence in the record whatsoever that Mr. Conner complained to Ms. McArdle about his feet or his dry skin at the time, and this was an issue that was raised for the first time on appeal. So even if the court wants to accept this as a new fact, that Mr. Conner complained to Ms. McArdle on March 7th about his dry skin and feet, his feet did not start to bleed until March 11th or 12th. We don't believe that there was a serious medical need once Mr. Conner's feet started to bleed, but at the time that she saw him on March 7th, there was no deliberate indifference. Then, the next time that Ms. McArdle saw Mr. Conner was on April 7th. On April 3rd, that was the date that Mr. Conner got his, I'm sorry, April 4th was the date that he got access to his creams and lotions again, and then on April 6th, he wrote a health service request stating that he only suffered from March 3rd to April 3rd. So on the April 7th appointment, there's nothing that she could have done to change the treatment, and he doesn't allege that he asked for different treatment. So given those two limited interactions, Ms. McArdle was not deliberately indifferent to Mr. Conner. Now, there are multiple parts of the brief that say that Ms. McArdle should have known about his foot condition, but deliberate indifference requires personal involvement. There were health service requests that were directed to Ms. McArdle, but those health service requests are triaged and responded to first by nurses if they're able to, then they're responded to by Ms. Waterman, and if Ms. McArdle has to respond to them, she will. It's undisputed that she did not respond to any health service requests in this matter to Mr. Conner, and then she only saw him when a specific appointment was made. She did not see the signs on his cell. She wasn't involved in the treatment plan on March 15th. It was only when she specifically saw him. And if there are no further questions, I thank you. Thank you. Thank you, counsel. Anything further? Thank you very much. The case is taken under advisement.